**Clarence V. SAUNDERS, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–516.**

United States Court of Veterans Appeals.

March 3, 1993.

As Amended May 24, 1993.

Clarence V. Saunders, pro se.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Michael A. Leonard were on the pleadings, for appellee.

Before KRAMER, MANKIN and STEINBERG, Associate Judges.

STEINBERG, Associate Judge:

The appellant, veteran Clarence V. Saunders, appeals a January 14, 1991, Board of Veterans' Appeals (BVA or Board) decision denying entitlement to Service Disabled Veterans Insurance (SDVI), a form of National Service Life Insurance (NSLI). *Clarence V. Saunders,* BVA 91–01225 (Jan. 14, 1991). The Secretary of Veterans Affairs (Secretary) has moved for summary affirmance. The Court holds that summary disposition is inappropriate because this case is not one "of relative simplicity" under the criteria in *Frankel v. Derwinski,* 1 Vet.App. 23, 25–26 (1990). The Court will vacate the BVA decision, retain jurisdiction, and remand the matter to the Board for proceedings consistent with this opinion.

## I. BACKGROUND

The veteran served on active duty in the United States Army from April 26, 1950, to April 26, 1953. R. at 1. While in service he applied for and was issued two policies under the NSLI "V" insurance program [hereinafter "V" insurance], each in the amount of $5000; the first policy was issued in May 1950 and the second in March 1951. Supp.R. at 1–3. The V and SDVI insurance programs are administered by the Department of Veterans Affairs (formerly Veterans' Administration) (VA). In July 1953, a VA regional office (RO) awarded the veteran service-connected disability compensation for a right-arm wound (rated 10% disabling) and for deformity of the right index finger (rated 10% disabling), as well as service connection for residuals of a right-knee wound (rated 0% disabling), for a combined rating of 20%, effective April

27, 1953. Supp.R. at 8; R. at 7. Although the VARO's July 1953 award letter indicated that an "Insurance Par[agraph]" was enclosed with the letter, the record on appeal does not contain such a paragraph. In April 1954, the VARO increased his right-arm rating to 30%, for a combined rating of 40%, effective April 20, 1954. R. at 10. Although the veteran continued payments to the VA on his V insurance policies for some time after discharge, both of the policies lapsed in 1959 due to nonpayment of the premiums. The VA's Insurance Division (Division) informed the veteran in October 1962 and again in May 1972 (apparently after he had made inquiry) that policies could not be reinstated. R. at 11–12.

In an August 1976 "Statement in Support of Claim", the veteran stated that he had never been told that he was eligible for SDVI. R. at 13. The Division deemed the August 1976 statement to be merely an inquiry, and in September 1976 the Division informed him that applications for SDVI must be submitted within one year following notice of the grant of service connection, and also that any VA failure to advise him of eligibility for SDVI would not extend the one-year application period. R. at 14. The letter also stated: "The [VA] is not legally obligated to specifically inform each veteran of his eligibility for the insurance." *Ibid.*

In January 1989, the veteran filed an application for $10,000 of SDVI. Supp.R. at 10. The application was denied by the Division in February 1989 because application was not made within the one-year period, which had expired on July 14, 1954. R. at 15. In a March 1989 letter to the Division, the veteran stated his opposition to the denial of his application and requested copies of any documents indicating that he had been informed of the one-year application period. He also stated that in 1979 he had been awarded a 10% service-connected rating for his right knee, implying that this rating action started another application period for SDVI. R. at 16–17.

In a May 1989 letter to Congressman G.V. "Sonny" Montgomery, the Division director stated, inter alia, that the 1979 10% rating of the right knee was simply a re-rating of the disability which had been rated 0% in 1954, and that all ratings subsequent to July 10, 1953, had been re-ratings of the disabilities rated that date. R. at 19. The director stated that the only exception to the one-year application period is if the evidence shows a veteran to be incompetent during that period; he also stated that VA cannot legally waive the one-year application period based on the fact that the veteran did not receive information regarding SDVI. R. at 20.

In July 1989, the veteran filed a Notice of Disagreement with the Division's denial of his insurance application. R. at 21–22. He alleged a violation of his due process rights under the Fifth Amendment. In November 1989, he filed a VA Form 1–9 (Appeal to the BVA), alleging both due process and equal protection violations. R. at 23. In an accompanying memorandum, he stated that he would have converted his V insurance policies had he been timely informed of his eligibility for SDVI. R. at 24. He argued that VA had the burden of proof to demonstrate that he had been informed of the right to apply for SDVI, and that that burden would be met only upon its producing a document showing he had been so informed and bearing his signature "showing that he was aware of what he was signing.... [A]nything less would violate the 'Due Process and Equal Protection' Clauses". R. at 25. He alleged that Congress did not intend to give VA authority to deny a disabled veteran the opportunity to apply for SDVI without the VA having first notified the veteran of eligibility. R. at 26. He also alleged that 38 U.S.C.A. § 722(a) (now § 1922(a) (West (1991)), quoted in part II.A., below, is "unconstitutional, ambiguous and arbitrary". *Ibid.*

At an April 1990 personal hearing before the RO, the veteran stated that he had not been informed that he could reinstate his lapsed V insurance policies, have premiums deducted from his disability payments, or apply for SDVI. R. at 43. He stated that the "only issue" was the constitutionality of 38 U.S.C.A. § 722(a) "and other sections thereunder". *Ibid.* At the hearing he submitted a memorandum of law. In the

memorandum he stated that, although VA's October 1989 Statement of the Case said that during the period he was eligible to apply for SDVI he already had the maximum amount of NSLI insurance and was thus ineligible for additional insurance coverage (either V or SDVI), he would have converted his V insurance policies to SDVI policies had he been timely informed of that option. R. at 45.

In its January 14, 1991, decision denying the veteran's claim, the BVA concluded that VA had no obligation to notify veterans of entitlement to SDVI and that no liability was created by its failure to do so. It conceded that, "inasmuch as the veteran had the maximum amount of insurance allowable by statute in 1953, it is plausible that he may not have received actual notice from the [Division] concerning his eligibility for [SDVI]". *Saunders*, BVA 91–01225, at 4–5. The Board denied the veteran's claim on the ground that he had failed to file his SDVI application within the statutory one-year period following the initial award of service connection. *Id.* at 4.

## II.  ANALYSIS

### A.  Eligibility Requirements for SDVI

Section 1922(a) of title 38, U.S.Code, currently provides:

Any person who is released from active military, naval, or air service, under other than dishonorable conditions on or after April 25, 1951, and is found by the Secretary to be suffering from a disability or disabilities for which compensation would be payable if 10 per centum or more in degree and except for which such person would be insurable according to the standards of good health established by the Secretary, shall, upon application in writing made within two years from the date service-connection of such disability is determined by the Secretary and payment of premiums as provided in this subchapter, be granted insurance by the United States against the

death of such person occurring while such insurance is in force.

38 U.S.C.A. § 1922(a) (West 1991). Until September 1, 1991, the application period for SDVI expired one year after the date of award of service connection. *See* Pub.L. No. 102–86, § 201(a)(1), 105 Stat. 414, 415 (1991) (extending application period to two years effective September 1, 1991).

### B.  Duty to Inform the Appellant of Possible SDVI Eligibility

█ The appellant asserts that VA had a duty to inform him of his possible eligibility for SDVI, implying that a VA failure to make timely notification to him had the effect of tolling the one-year application period until such notification was made. The appellant acknowledges that section 1922(a) does not itself impose any notification requirements upon VA. *See* the discussion in part II.D.ii., below. In *Smith (Edward F.) v. Derwinski*, 2 Vet.App. 429, 432–33 (1992), the Court held that the Secretary had a statutory obligation, under 38 U.S.C.A. § 7722(d) (West 1991), during the one-year retroactive VA pension application period under 38 U.S.C.A. § 5110(b)(3)(B) (West 1991), to advise a pension applicant of the one-year period in which to make specific application for retroactive pension, and the Secretary's failure to meet that obligation necessitated the equitable tolling of the application period. *See also Conary v. Derwinski*, 3 Vet.App. 109 (1992) (Steinberg, J., concurring) (pursuant to 38 U.S.C.A. § 7722(d) Secretary was statutorily obliged to give veterans "the information [they] needed" in order to make timely and effective application for upward adjustment of VA pension benefit based on unreimbursed medical expenses under 38 U.S.C.A. § 1503(a)(8) (West 1991)). However, the outreach provision codified in section 7722 was enacted only in March 1970 (Pub.L. No. 91–219, § 214(a), 84 Stat. 76, 84 (1970)), almost seventeen years after the appellant's discharge from service. Section 7722 has no provision for retroactive application to a veteran in the appellant's circumstances. Even if the section were ap-

plicable, it is not clear that the VA would have violated it, since the appellant's service-connection award letter (R. at 7) indicates that he had been sent some information regarding insurance benefits. *See* part II.C.2., below.

### C. Constitutional Challenges to 38 U.S.C.A. § 1922(a)

■ The appellant's allegation that 38 U.S.C.A. § 1922(a) violates the U.S. Constitution is, in essence, two distinct claims: First, that the statute's requirement that application for SDVI coverage be made within one year (now two years) after an initial grant of service connection violates the appellant's due process and equal protection rights; and, second, that the statute violates these same constitutional rights because it does not require VA to make timely notification to eligible applicants of the SDVI application deadline. The Board is not free to ignore the issues a claimant raises in his appeal. *See Smith (Morgan) v. Derwinski*, 2 Vet.App. 137, 141 (1992). In this case, the BVA did not fulfill its obligation to address these constitutional claims or to explain why it was electing not to do so (*see* the discussion under part II.D.ii, below), and failed to comply with its duty to assist the claimant under 38 U.S.C.A. § 5107(a) (West 1991) (*see* the same discussion).

■ An appellant who seeks redress in federal court must demonstrate "actual injury redressable by the court". *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). Moreover, because this Court, as a court established by Congress under Article I of the Constitution, has adopted the "case or controversy" jurisdictional restraints applicable to Article III courts, *Mokal v. Derwinski*, 1 Vet.App. 12, 13 (1990), the Court will not anticipate a question of constitutional law in advance of the necessity of deciding it. *See United States v. Raines*, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960) ("power of the federal courts to declare Acts of Congress uncon-

stitutional lies in the power and duty of those courts to decide cases and controversies properly before them").

■ **1. One-year application period:** The appellant's first claim is that the one-year (now two-year) application period for SDVI, established by 38 U.S.C.A. § 1922(a), on its face violates the Constitution. It is clear that under the statute the appellant can no longer obtain the SDVI coverage he desires, the application period having expired over thirty-eight years ago. Thus, because the facts of record as to that claim present an actual "case or controversy", the claim is properly before the Court and will be reviewed. *See Mokal, supra.*

■ First, citing *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the appellant asserts that section 1922(a) violates the Fifth Amendment by depriving him of a statutory entitlement without due process. In *Goldberg*, the Supreme Court held that the Due Process Clause requires that a recipient of public assistance benefits be afforded an evidentiary hearing before the termination of benefits. The Court reasoned that public assistance benefits are a matter of statutory entitlement, that withdrawal of the benefits would constitute a "grievous loss", and that a beneficiary has a property interest in them which is protected by the Due Process Clause. The present case is readily distinguishable from *Goldberg*. The appellant did not have any benefits withdrawn by VA; nor does he have any property interest in SDVI. The appellant, citing *Lynch v. United States*, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934), asserts that he did have a protected property interest. Although it is true that, while the appellant's V policies were in force, those insurance contracts gave rise to a property interest, that interest was extinguished when the policies lapsed due to his failure to pay the premiums. Since neither the applicable law and regulations nor the V application forms provide for the conversion of V insurance to SDVI, the appellant did not have any contractual right to apply for or

obtain SDVI. Further, any noncontractual interest he may have had in applying for SDVI did not constitute a property interest. *See Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) ("noncontractual claim to receive funds from the public treasury enjoys no constitutionally protected status" (citing *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970))). Consequently, because the appellant has no protected property interest in either SDVI or V insurance, his due process argument fails.

▮ Next, as to appellant's equal protection claim, the proper standard of review is the "rational basis" test, under which a statute withstands constitutional scrutiny on equal protection grounds (the Equal Protection Clause is applied to the federal government through the Fifth Amendment's Due Process Clause, *see Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954)) unless the statute is "patently arbitrary and irrational" and not reasonably related to any proper congressional purpose. *U.S. R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 177, 101 S.Ct. 453, 460, 66 L.Ed.2d 368 (1980); *see also Wood v. Derwinski*, 1 Vet.App. 190, 194 n. 1 (1991) (Steinberg, J., concurring) (describing "rational basis" test and citing cases where the test was not met). Here, although VA has not offered any justification for either the one- or two-year limit, and the legislative history is silent, the most obvious justification for such a limitation would be to bring veterans into the SDVI risk pool at the earliest possible age, thus spreading the risk among younger, relatively healthier veterans; otherwise, veterans might wait to apply for coverage until they were older and sicker (indeed, without such a limitation, veterans could forestall seeking coverage until in risk of imminent death), thereby increasing the costs to such an extent that the governmental subsidy would be too costly, or premiums would be made so high that few veterans could afford the coverage. When there are "plausible reasons" for Congress to enact such a limitation, whether or not such a basis was actually expressly articulated by Congress in some fashion, this Court's scrutiny under the rational basis test "is at an end". *Fritz*, 449 U.S. at 179, 101 S.Ct. at 461. The same "rational basis" analysis also applies to the veteran's implied challenge to the constitutionality of the provision in section 1922(a) that starts the eligibility period at the "date service-connection of [the] disability is determined by the Secretary", but not at the time a service-connected disability is re-rated.

**2. Lack of a notification provision in section 1922(a):** Having rejected the appellant's challenge to the constitutionality of the one-year SDVI application provision, the Court now turns to the appellant's second constitutional claim: That Congress could not constitutionally establish such an application deadline without also establishing a provision for timely notification to eligible veterans of that deadline. Here, the Court is unable to determine whether the appellant's asserted inability, because of lack of knowledge, to "convert" his V policies to SDVI policies during the one-year application period constituted "actual injury". Because the record before the Court does not show the cost of premiums for comparable V and SDVI policies, it is not clear that the appellant suffered any financial harm because the statute fails to require that VA timely notify eligible veterans of their right to apply for SDVI; further inhibiting this Court's review is the fact that the record does not show what information, if any, the VA provided the appellant concerning his eligibility for SDVI. Consequently, because this constitutional claim does not present an actual "case or controversy", the Court will not review the claim. *See Mokal, supra; see also Jean v. Nelson*, 472 U.S. 846, 854, 105 S.Ct. 2992, 2996, 86 L.Ed.2d 664 (1985) ("Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99, 101 S.Ct. 2193, 2199, 68 L.Ed.2d 693 (1981))).

When a claimant submits a well-grounded claim, the Board is required to assist the claimant "in developing the facts pertinent to the claim." 38 U.S.C.A. § 5107(a) (West 1991); *see Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990) (well-grounded claim is a "plausible" claim). Here, the veteran's claim is well grounded, because it is plausible that he may have been harmed by his allegedly not having been informed, prior to the V policies lapsing in 1959, of the opportunity to apply for SDVI coverage for which he was eligible. Accordingly, even though the Board was not required to adjudicate the constitutionality of section 1922(a), the Board was under a statutory duty to assist the veteran in developing his claim. Here, that duty included, at a minimum: (1) Attempting to determine the contents of the "Insurance Par[agraph]" enclosure referred to in the July 1953 letter notifying the appellant of the award of service connection, a reference which, the Secretary states in his motion for summary affirmance, indicates that the appellant "was apparently sent some general information concerning possible eligibility for [SDVI]" (Mot. at 3); and (2) providing the necessary information from which it could be determined, on the basis of the premiums for comparable SDVI and V policies, and taking into account the dividends paid on V policies, whether a conversion to SDVI would have been to the veteran's financial benefit. Because the Board breached its statutory duty to assist the veteran, the Court will remand the matter to the Board for it to determine whether the appellant suffered any harm by not converting his insurance policies.

It has generally been thought that the adjudication of the constitutionality of congressional enactments is "beyond the jurisdiction of administrative agencies", including the BVA. *Johnson v. Robison,* 415 U.S. 361, 368, 94 S.Ct. 1160, 1166, 39 L.Ed.2d 389 (1974); *see also, Public Utilities Comm'n v. United States,* 355 U.S. 534, 539–40, 78 S.Ct. 446, 450, 2 L.Ed.2d 470 (1958). On the other hand, "[a]dministrative agencies are entitled to pass on constitutional claims but they are not required to do so", *Plaquemines Port v. Federal Maritime Comm'n,* 838 F.2d 536, 544 (D.C.Cir.1988); because the appellant's claim for entitlement to SDVI arises under a law that affects the provision of benefits by the Secretary, the Board had jurisdiction over the claim. *See* 38 U.S.C.A. §§ 511(a), 7104(a) (West 1991). Appellant's claim for entitlement to SDVI is not purely a constitutional claim, but is intertwined with factual questions. Because the appellant's claim was well grounded, the Board's duty to assist him required it to carry out the necessary factual development. Although courts generally will not require the exhaustion of administrative remedies where the administrative agency's inability to grant the relief requested renders such exhaustion futile, *Asociacion Colombiana de Exportadores de Flores v. United States,* 916 F.2d 1571, 1575 (Fed.Cir.1990), the need for factual development to help the court resolve the constitutional issue is a proper reason for requiring exhaustion of remedies before judicial review of the constitutionality of a statute. *W.E.B. DuBois Clubs of America v. Clark,* 389 U.S. 309, 312, 88 S.Ct. 450, 452, 19 L.Ed.2d 546 (1967). Here, because the Board's breach of its statutory duty to assist the appellant in developing his well-grounded claim leaves the Court with an incomplete record upon which to review the claim that section 1922(a) violates the Constitution, remand is the appropriate remedy.

### D. Inadequacy of the Secretary's Response

Finally, the Court notes with concern that the Secretary, in his motion for summary affirmance filed with this Court, has failed adequately to address the constitutional arguments raised by the appellant in his brief. For example, the Secretary's motion does not discuss any of the more than a dozen cases that the appellant cited in support of his constitutional claims. This Court has held that a motion for summary disposition is inappropriate "when it does not address all issues presented and all forms of relief potentially implicated."

*MacWhorter v. Derwinski*, 2 Vet.App. 655, 656–57 (1992), *modifying* 2 Vet.App. 133 (1992). The Court further stated in *MacWhorter*: "Although counsel has a duty to represent the client diligently, counsel also has a duty, as an officer of this Court, to weigh and consider carefully the propriety of the response to be given the Court." *MacWhorter, supra.* The Secretary's response in this case was clearly inadequate.

### III. CONCLUSION

For the foregoing reasons, the Court vacates the BVA's January 14, 1991, decision and remands the matter to the Board for prompt fulfillment of the duty to assist by developing the record further in the two specific respects set forth in part II.D.ii., above. The Board is free to express a view on the appellant's claim that 38 U.S.C.A. § 1922(a) violates the Constitution. *See Plaquemines Port, supra.* The Court retains jurisdiction. The Secretary shall file with the Clerk (as well as serve upon the appellant) a copy of any Board decision on remand. Within 14 days after any such final decision, the appellant shall notify the Clerk whether he desires to seek further review by the Court.

VACATED AND REMANDED.