**In the Matter of the Fee Agreement of James W. STANLEY.**

**No. 94–587.**

United States Court of Veterans Appeals.

June 27, 1996.

James W. Stanley, Jr., Little Rock, AR, was on the brief, for appellants.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; Adrienne Koerber, Deputy Assistant General Counsel; and Jacqueline M. Sims, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and STEINBERG, Judges.

STEINBERG, Judge:

The appellants, veteran Danny Bowles and his counsel, attorney James W. Stanley, Jr., appeal a July 18, 1994, Board of Veterans' Appeals (BVA or Board) decision denying the counsel's motion for a formal order finding that the fees charged (but not yet paid) under the October 1993 fee agreement between the two were for services rendered after a final decision by the Board. Record (R.) at 9–10. For the reasons that follow, the Court will affirm the Board decision.

## I. Background

The veteran had active service in the U.S. Army from August 1970 to December 1971. R. at 15. In December 1989, a Department of Veterans Affairs (VA) regional office (RO) granted him service connection for post-traumatic stress disorder (PTSD) and assigned a 30% disability rating, effective from July 24, 1989. R. at 41–42. In February 1991, the VARO continued the 30% rating. R. at 44. In February 1992, VA received notice from the veteran of his appointment of James Stanley, Esq., as his authorized representative. R. at 67, 71. That same month, the veteran filed a Notice of Disagreement (NOD). *See* R. at 46, 191.

After a hearing at the RO, in May 1992 the hearing officer denied a PTSD rating greater than 30%. *See* R. at 128–29, 191. In June and July 1992 decisions, the RO continued the December 1989 rating. R. at 133, 175. In an August 1992 Substantive Appeal to the Board, the appellant veteran contended that he was entitled to a 70% rating for PTSD and a 100% rating for total disability based on individual unemployability (TDIU). R. at 184–85.

In December 1992, the Board found that "additional assistance" (R. at 192) and "clarifying evidence" (R. at 194) were required and remanded the case to the RO for the following actions: (1) to obtain and associate with the claims folder any VA vocational rehabilitation folder; (2) to have the veteran complete and return an up-to-date employment information statement; (3) to conduct a VA social and industrial survey which assesses "the impact of the veteran's psychiatric disorder on his ability to secure and follow substantially gainful employment"; (4) to obtain all relevant records from the Social Security Administration; (5) to schedule an examination by a VA specialist in psychology; and (6) to consider the veteran's TDIU claim and whether an extra-schedular rating is warranted. R. at 192–93.

The Board stated:

Following completion of these actions, the RO should review the evidence and determine whether the veteran's claims may now be granted. If not, he and his representative should be provided with a supplemental statement of the case [(SSOC)].... Thereafter, the case should be returned to the Board for further appellate review.

R. at 193–94. The decision also notified the veteran as follows: "Under 38 U.S.C.[] § 7252 ... only a decision of the [Board] is appealable to the United States Court of Veterans Appeals. This remand is in the

nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal." R. at 195.

In the August 1993 RO decision on remand from the Board, the RO granted entitlement to a 100% schedular rating for PTSD, effective from January 14, 1991, and stated: "Entitlement to [TDIU] is not a factor as a total 100% evaluation was granted." R. at 255–56. An RO letter dated September 2, 1993, notified the veteran of the August 1993 RO decision, provided the monthly rates of his benefit payment, enclosed a copy of the decision and a statement of his appeal rights, and stated: "This action constitutes a full grant of the benefits sought by you, and your appeal has been withdrawn." Supplemental R. at 1.

In December 1993, the veteran sent the RO a letter disagreeing with the effective date assigned by the RO in its August 1993 decision. R. at 265. The letter also stated: "It is further error by the Board of Veterans' Appeals not to recognize [the veteran's 1989 informal claim] in its final decision of September 2, 1993." *Ibid.*

As to the issue of the attorney's fee, in November 1993 the veteran's counsel submitted to VA a copy of their October 1993 retainer agreement. R. at 258–60. The contract provided, inter alia: "Client retains the firm of James W. Stanley, Jr., to provide legal services at any time after the first denial decision by the [Board; and c]lient agrees to pay a fee of 25% retroactive benefits in connection with the Client's claim with [VA]" in the event of a favorable decision on the claim. R. at 259. That same month, in a letter from Mary Gallagher, Counsel to the BVA Chairman, the BVA notified the counsel that the Board's December 1992 remand was not a final decision by the Board and that fees could not be authorized "for any services ... perform[ed] before the date that the Board enters a final decision". R. at 262. In response, the counsel stated in a December 23, 1993, letter that he agreed that the December 1992 remand by the Board was a "preliminary order and not a final decision"; however, he also stated that "the [RO], on behalf of the BVA, issued a final decision on September 2, 1993", that that decision is a

final Board decision because the BVA retained jurisdiction over the appeal while it was remanded to the RO, and that that decision was "partially favorable to the veteran". R. at 267. A January 1994 letter from the counsel clarifies that the retainer agreement seeks only "to charge [the veteran] for services [rendered] after the [Board's] final decision—the September 2, 1993[,] award." R. at 273.

In February 1994, the veteran's counsel submitted a letter to the BVA wherein he stated that he was "asking the Board ... to enter a formal order finding [that a final Board decision was made]". R. at 278. He also stated that if the Board finds that there was no final BVA decision and that he is unable to charge a fee, then he contended that "38 U.S.C. [§ ] 5904(c)(1) and 38 C.F.R. [§ ] 20.609(c)(1) are unconstitutional in that they deny the right of counsel and to due process of law". R. at 278.

In the July 1994 BVA decision here on appeal, the Board denied entitlement to a fee under the October 1993 retainer agreement. The Board found that it had not rendered a final decision on any claim in which the attorney had represented the veteran. R. at 9–10. As to the constitutional arguments raised in the counsel's letter, the Board concluded that their resolution "exceed[ed] the jurisdiction of this Board". R. at 7.

## II. Analysis

### A. Lack of a Final Board Decision

■ In the brief submitted on appeal in this Court, the appellants concede that the Board's December 1992 remand of the case to the RO for further development was a "preliminary order" (Brief (Br.) at 10), but contend that the August 1993 RO decision "was, in fact, a 'final decision' by the [Board] for purposes of 38 U.S.C. § 5904" because the RO "merely issued an order as a surrogate of the BVA upon remand" (Br. at 11) when the Board had "continuing jurisdiction [over] the case" (Br. at 10) under *Hamilton v. Brown,* 4 Vet.App. 528 (1993) (en banc), *aff'd,* 39 F.3d 1574 (Fed.Cir.1994).

The appellants argue that once the August 1993 decision had been issued, the veteran was "free to retain the services of his counsel

and to pay him a fee pursuant to [section 5904(c)] for all subsequent work performed on the case, including the handling of the appeal of the disability compensation onset date, a matter currently before the Secretary." Br. at 12. The Secretary maintains that the Board's December 1992 action remanding the matter to the RO specifically noted that it was a preliminary order and not a final decision by the Board and that under 38 C.F.R. § 20.1100(b) it does not constitute a final decision of the Board. Br. at 9. He fails to address the above argument based on *Hamilton* made by the appellants.

Contrary to the Secretary's arguments, the issue before the Court is not whether the Board's December 1992 decision remanding the case to the RO constituted a final decision of the Board. It clearly did not, and the appellants so conceded in their brief. Rather, the issue is whether the RO's August 1993 decision on remand from the Board constitutes a "final decision" made by the Board under 38 U.S.C. § 5904(c)(1). *See also* 38 C.F.R. § 20.609(c)(1) (1995).

Section 5904 of title 38, United States Code, provides:

(c)(1) Except as provided in paragraph (3), in connection with a proceeding before the Department with respect to benefits under laws administered by the Secretary, *a fee may not be charged, allowed, or paid* for services of agents and attorneys with respect to services provided before the date on which *the Board of Veterans' Appeals first makes a final decision* in the case. Such a fee may be charged, allowed, or paid in the case of services provided after such date only if an agent or attorney is retained with respect to such case before the end of the one-year period beginning on that date. The limitation in the preceding sentence does not apply to services provided with respect to proceedings before a court.

38 U.S.C. § 5904(c)(1) (emphasis added). The Court's decision in *In the Matter of the Fee Agreement of William G. Smith in Case Number 91–488* [hereinafter *Matter of Smith II*] explained some history with respect to this provision:

Prior to the enactment of the Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687, Div. A, 102 Stat. 4105 (1988), an attorney or agent was proscribed from charging a claimant more than $10 for representation before the VA or the [Board] on a veteran[s'] benefits claim. *See* Act of July 14, 1862, §§ 6, 7, 12 Stat. 566, 568 (imposing $5 fee limitation); Act of July 4, 1864, §§ 12, 13, 13 Stat. 387, 389 (raising $5 fee limitation to $10, the prevailing limit until implementation of the VJRA in 1988).... The objective of the fee limitation was to maintain the informality of the VA's claims adjudication process. *See Walters v. National Association of Radiation Survivors [ (NARS) ]*, 473 U.S. 305, 323–27, 105 S.Ct. 3180, 3190–92, 87 L.Ed.2d 220 (1985). Recognizing that claimants seeking judicial review of the denials of claims for veterans benefits needed qualified representation at reasonable costs (*see Matter of Smith*, 1 Vet.App. 492, 502 (1991) (Steinberg, J. concurring)), Congress repealed the $10 fee limitation; revised subsection (c) of 38 U.S.C.A. § 5904 (formerly § 3404); and added a new subsection (d) which permitted claimants to enter into fee agreements with attorneys and agents to represent them in benefits proceedings before the VA, BVA, and this Court, under certain specified circumstances. *See* VJRA, Pub.L. No. 100–687, §[§ ]104(a), [ ] 401, 403, 102 Stat. at 4108, 4122.

*Matter of Smith II*, 4 Vet.App. 487, 490 (1993) (per curiam) (citation omitted).

Pursuant to section 5904(c)(1), "[a] fee agreement may be entered into between a claimant and an attorney for services provided only after the BVA makes a final decision on the issue or issues involved in the case". *Matter of Smith II*, 4 Vet.App. at 490; *see* 38 C.F.R. § 20.609(c)(3) (1995). Thus, "while an attorney is not precluded from performing services prior to the issuance of a first final BVA decision, the attorney is precluded from charging a fee for such services." *Matter of Smith II*, 4 Vet.App. at 490. Also, the attorney must have been retained with respect to such case within one year following the date on which the BVA made its final decision on the issues involved in the case. *Ibid; see* 38

U.S.C. § 5904(c)(1); 38 C.F.R. § 20.609(c)(1). The Court notes that, because section 5904(c)(1) precludes both the payment *and* receipt of a fee for such services, both the veteran and the attorney are appellants here.

For the reasons that follow, the Court holds that the August 1993 RO decision in the present case was not a final *Board* decision. Pursuant to 38 C.F.R. § 19.38:

> When a case is remanded by the [Board,] the [AOJ] will complete the additional development of the evidence or procedural development required. Following completion of the development, the case will be reviewed to determine whether the additional development, together with the evidence which was previously of record, supports the allowance of all benefits sought on appeal. If so, the *Board* and the appellant and his or her representative, if any, will be promptly informed. If any benefits sought on appeal remain denied following this review, the [AOJ] will issue a[n SSOC] ... [and] the case will be *returned to the Board for further appellate processing* ....

38 C.F.R. § 19.38 (1995) (emphasis added). In its opinion in *Hamilton, supra*, the U.S. Court of Appeals for the Federal Circuit suggested that an RO can act as either an agency of original jurisdiction or as "an arm of the Board":

> According to 38 C.F.R. § 19.182(c) [now 38 C.F.R. § 19.38], a case *which has been remanded* to the unit which made the initial determination [ (the RO) ] is automatically returned to the Board for further processing if full relief is not awarded by the [RO] *on remand*. As the regulation puts it, "[u]nless the benefits at issue on appeal are awarded upon review by the [RO], the records will be returned to the [Board] *for completion of appellate review*." It is thus apparent that the Agency *on remand* is acting as an arm of the Board ‸and not as an "agency of original jurisdiction" [ (AOJ) ].

*Hamilton*, 39 F.3d at 1584–85 (emphasis added) (footnote omitted). The focus of *Hamilton* was on resolving whether multiple Notices of Disagreement (NODs) under 38 U.S.C. § 4105 (now § 7105) were required,

or even permissible, where subsequent RO decisions were made necessary by BVA remands. *Hamilton* held that a claim appealed to the BVA pursuant to the filing of an NOD remained in appellate status, regardless of whether subsequent actions were taken on that claim by an RO or the BVA, until a final disposition of the claim was made and that no additional NOD was required or permitted in order to continue the appellate process. *See Hamilton*, 4 Vet.App. at 538, *aff'd*, 39 F.3d at 1582–85. The Federal Circuit's suggestion in Hamilton that an RO, in readjudicating a claim on remand, is "acting as an arm of the Board", was made for the purpose of distinguishing the RO's action in deciding a claim as an initial matter from its action in deciding the claim as a readjudication. *See Hamilton*, 39 F.3d at 1585. The Federal Circuit interpreted the phrase "completion of appellate review" (appearing now in § 19.38) to mean that "the Board conducts the function of appellate review" and as being "not inconsistent with the notion that the [RO] on remand is functioning on behalf of the Board, *i.e., performing tasks that will facilitate the Board's appellate review*". *Hamilton*, 39 F.3d at 1585 (emphasis added).

Neither this Court nor the Federal Circuit held in *Hamilton* that an RO decision made on remand from the Board was a final decision *of* the Board. And, consistent with applicable law and regulation, it seems inconceivable that an RO decision could ever be a decision of the Board for purposes of a fee agreement under section 5904(c)(1) even if the RO completed the Board's appellate review function by awarding all benefits sought on appeal (*see* 38 C.F.R. § 19.38), or even if the claimant withdrew his or her NOD (*see* 38 C.F.R. § 20.204(c) (1995) (only a claimant or his or her representative may withdraw NOD)) or otherwise acquiesced in the RO's decision. *See Hamilton*, 39 F.3d at 1585; *Hamilton*, 4 Vet.App. at 537–38. The appellants' argument here that the August 1993 RO decision did not award all benefits sought and that it was, nonetheless, a final decision is internally inconsistent. The appellants cannot have it both ways. Not only is there no support for the conclusion that the RO's August 1993 decision awarded all benefits

sought on appeal, but if all benefits sought had been awarded there would be no representation which the attorney appellant would have performed, and for which he would have been seeking a fee under section 5904(c), in connection with such a fully awarded claim.

The RO here was thus acting on behalf of the Board only in the sense that that decision "facilitated the Board's appellate review", and the appellants must fail in their quest to have the Court treat that RO decision as a BVA decision. *Hamilton*, 39 F.3d at 1585.

## B. Constitutionality of Fee Limitation

The appellants contend that if the Court holds that the August 1993 RO decision was not a final BVA decision, then 38 U.S.C. § 5904(c)(1) "impermissibly restricts the right of a veteran ... to hire, pay, retain, employ, and utilize the services of an attorney in violation of the due process clause of the 5th Amendment of the U.S. Constitution" and the ability of veterans to retain counsel to prosecute their appeals to this Court. Br. at 12–13. They assert that a restriction of such a right at the administrative level effectively precludes later representation on appeal and that the "current lack of representation before this [C]ourt and the high number (80%) of pro se appeals can be attributed in large part to the inability of veteran litigants to retain attorneys and other representatives and to be able to pay them at the outset of their cases when the most meaningful development of the claim may take place." Br. at 14. The Secretary responds that the constitutionality of the fee limitation has previously been upheld by the Supreme Court in *Walters v. NARS*, 473 U.S. 305, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985), and that the appellants' arguments must therefore fail.

Although the Board did not issue a final decision on the appellants' constitutional issues, they were raised to the Board and require no further factual development by the Board. *See Saunders v. Brown*, 4 Vet. App. 320, 326 (1993). For the reasons set forth below, the Court concludes that neither of the appellants has standing to raise these constitutional issues.

**1. *Law on Standing.*** Under 38 U.S.C. § 7266(a), in order to seek review in this Court, an individual must be "adversely affected" by the BVA decision appealed. 38 U.S.C. § 7266(a). As stated by the Court in *Landicho v. Brown*, "[t]his requirement of aggrievement echoes the standing requirement that a party must 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the [appellee]'." *Landicho*, 7 Vet. App. 42, 49 (1994) (quoting *Waterhouse v. Principi*, 3 Vet.App. 473, 475 (1992)). In addition, the injury must be "likely to be redressed by a favorable decision." *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976); *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). This standing requirement emerges from the case-or-controversy requirement in Article III, Section 2, of the U.S. Constitution, a jurisdictional restraint to which this Court has held it will adhere. *Landicho, supra; Mokal v. Derwinski*, 1 Vet. App. 12, 13 (1990). Even where there is a sufficiently concrete interest in the outcome of the suit to create a case or controversy subject to Article III jurisdiction, the Supreme Court has established a second distinct standing question as to the rights of litigants to raise arguments based on the potential rights of third parties: specifically, "whether, as a prudential matter, the [party is a] proper proponent[ ] of the particular legal rights on which they base their suit." *Singleton v. Wulff*, 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976); *see also Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 623–24 n. 3, 109 S.Ct. 2646, 2651 n. 3, 105 L.Ed.2d 528 (1989) (citing *Singleton, supra*, and other cases); *Amato v. Wilentz*, 952 F.2d 742, 748 (3rd Cir. 1991). In deciding whether to dismiss a case or argument based on lack of standing, the Court must accept as true the contentions made in support of standing as contained in the pleadings. *See Warth*, 422 U.S. at 501, 95 S.Ct. at 2206 ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint").

■ **2. Standing of appellant veteran.** As to the appellant veteran here, he lacks basic Article III, case-or-controversy standing to bring such constitutional arguments because, unlike the appellees in *Walters,* 473 U.S. at 308, 105 S.Ct. at 3182–83, he was not denied (nor does he assert that he was or will be denied) legal representation in presenting his claims to VA or to this Court. In February 1992 (prior to filing an appeal to the Board on the PTSD claim), the veteran's attorney was appointed by the veteran as his authorized representative. R. at 67, 71. The veteran's lack of standing is further shown by the fact that he has not yet appealed his PTSD claim to this Court, so a denial of representation in this Court could not have yet occurred and is purely speculative. Accordingly, the Court holds that the veteran is not an "injured" party, is thus not "adversely affected", pursuant to 38 U.S.C. § 7266(a), by the BVA decision on appeal, and therefore lacks standing to present his constitutional challenge.

■ **3. Standing of appellant attorney.** We turn next to the standing of the appellant attorney. For the reasons set forth below, the Court concludes that he also lacks standing to bring this appeal.

*a. Article III standing:* Although the appellant counsel ***provided*** representation to the veteran and thus cannot show that there has been a denial of attorney representation, he nonetheless has basic Article III standing to bring a constitutional challenge with respect to 38 U.S.C. § 5904(c)(1) because he suffers a loss of fees (a concrete injury) from the operation of the challenged statute. He has performed legal services for the veteran at the administrative level prior to a final Board decision. If counsel prevails in his suit to remove the fee limitation, he will benefit because he will then receive payment for such legal services. *See Singleton,* 428 U.S. at 112–13, 96 S.Ct. at 2873–74 (physician has concrete injury from application of challenged statute where he would have received payment of fees were it not for limitation in statute). However, the constitutional challenge he raises to the statutory provision precluding his receipt of a fee for providing representation rests entirely on the rights he asserts on behalf of third parties to receive such representation and not on any right on his part to provide it or to receive a fee for doing so. *Cf. Warth,* 422 U.S. at 509–10, 95 S.Ct. at 2210–11 (Court, noting that petitioners did not, even if they could, assert any personal right under Constitution or any statute to be free of action by neighboring municipality, proceeded to address petitioners' assertion of third parties' rights to be free of such action); *Fair Employment Council of Greater Washington, Inc. (FEC) v. BMC Marketing Corp.,* 28 F.3d 1268, 1277–78 (D.C.Cir.1994) (recognizing that adequately alleging "injury in fact" sufficient to meet requirements of Article III by litigant did not necessarily mean that Congress conferred a cause of action to redress injury resulting from alleged discrimination and violation of other people's rights under statute in question). Hence, we must examine his standing to assert those third-party rights.

■ *b. Third-party-rights standing; prudential factors:* As to the second inquiry—the prudential one—regarding standing to assert a third party's potential rights, the appellant attorney does not raise his own legal rights and interests, but those of the appellant veteran and all veterans. He contends that the fee limitation in section 5904(c)(1) contravenes third-party veterans' due process rights because, by prohibiting attorney compensation at the administrative level prior to the issuance of a final Board decision, the limitation renders veterans unable to obtain legal representation for their VA claims at the outset of their cases which then prevents them from obtaining counsel in prosecuting appeals in this Court. "Ordinarily, of course, a litigant 'must assert his [or her] own legal rights and interests, and cannot rest his [or her] claim to relief on the legal rights or interests of third parties.'" *U.S. Dept. of Labor v. Triplett,* 494 U.S. 715, 720, 110 S.Ct. 1428, 1431, 108 L.Ed.2d 701 (1990) (quoting *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 474, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982)). The reasons underlying this general rule are two: "First, the courts should not adjudicate such rights unnecessarily, and it may be that in

fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not. . . . Second, third parties themselves usually will be the best proponents of their own rights." *Singleton,* 428 U.S. at 114, 96 S.Ct. at 2874. Limitations on a litigant's assertion of third-party-rights standing "stem from a salutary 'rule of self-restraint' designed to minimize unwarranted intervention into controversies where the applicable constitutional questions are ill-defined and speculative." *Craig v. Boren,* 429 U.S. 190, 193, 97 S.Ct. 451, 455, 50 L.Ed.2d 397 (1976).

▪ In answering the prudential inquiry involved in questions of third-party-rights standing, the Supreme Court has held that three factors are to be examined in determining whether an exception to the general rule should be made: (1) The "relationship of the litigant to the person whose rights are being asserted"; (2) "the ability of the person to advance his own rights"; and (3) "the impact of the litigation on the third-party interests". *Caplin & Drysdale, supra* (citing numerous cases, including *Singleton,* 428 U.S. at 113–18, 96 S.Ct. at 2873–76); *Amato,* 952 F.2d at 749. A review of Supreme Court cases reveals that all factors need not be satisfied in order for the Court to allow standing. *See Powers v. Ohio,* 499 U.S. 400, 410–11, 413–15, 111 S.Ct. 1364, 1370–71, 1372–73, 113 L.Ed.2d 411 (1991) (recognizing that first and second factors must be "satisfied" to allow third-party standing); *Triplett,* 494 U.S. at 720, 110 S.Ct. at 1431–32 (discussing only first prudential factor in holding that litigant had standing); *Caplin & Drysdale, supra* (deciding standing question affirmatively based on finding of two factors for and one against standing).

The U.S. Courts of Appeals for the Third and D.C. Circuits have noted an apparent inconsistency in the application of the prudential factors by the Supreme Court. *See FEC,* 28 F.3d at 1280–81; *Amato,* 952 F.2d at 749; *see also City and Suburban Distributors–Illinois, Inc. v. Stroh Brewery Co.,* No. 87 C 1409, 1996 WL 251431 (N.D.Ill. May 8, 1996). In *FEC,* the D.C. Circuit attempted to reconcile "the Supreme Court's treatment of whether 'the obstacle factor' [second prudential factor] is an essential prerequisite to third-party standing". *FEC,* 28 F.3d at 1280. The D.C. Circuit quoted the Third Circuit in *Amato,* 952 F.2d at 749, which had cited the three prudential factors, concluded that *Powers* incorporated the third factor into its discussion of the first factor, also combined these two factors, and adopted a "flexible balancing approach". The D.C. Circuit then noted that generally "the 'obstacle' factor" has not been discussed and standing has been allowed in cases where " 'the third party's rights protect that party's relationship with the litigant' " (*FEC,* 28 F.3d at 1280 (quoting *Haitian Refugee Center v. Gracey,* 809 F.2d 794, 809 (D.C.Cir.1987))) and that in most of these cases "the litigant seeks to challenge direct restrictions on its *own* activities on the ground that enforcement of the restrictions against it would dilute or abrogate the rights of third parties" (*FEC,* 28 F.3d at 1280). The court also noted that standing has been found less frequently where the restrictions do not operate directly on the litigants themselves even though the restrictions allegedly "disrupt a special relationship—protected by the rights in question—between the litigants and the third parties." *Id.* at 1280 (citing as an example, *Caplin & Drysdale,* 491 U.S. at 623–24 n. 3, 109 S.Ct. at 2651 n. 3). We now follow the D.C. Circuit's interpretation and conclude that not all factors must be satisfied to allow standing. We thus proceed to examine and apply the factors to this case.

*i. First prudential factor:* In analyzing the first factor (the relationship of the litigant to the person whose rights are being asserted), the Supreme Court has espoused the following guiding principle: "When . . . enforcement of a restriction against the litigant prevents a third party from entering into a relationship with the litigant (typically a contractual relationship), to which the third party has a legal entitlement (typically a constitutional entitlement), third-party[rights] standing has been held to exist." *Triplett,* 494 U.S. at 720, 110 S.Ct. at 1432. "A restriction upon the fees a lawyer may charge that deprives the lawyer's prospective client of a due process right to obtain legal representation falls squarely within this prin-

ciple." *Ibid.* (citing *Caplin & Drysdale,* 491 U.S. at 623–24 n. 3, 109 S.Ct. at 2651 n. 3). In *Caplin & Drysdale,* the Supreme Court held that a law firm which had represented its client in his criminal defense had third-party-rights standing to advance the client's claimed Sixth Amendment right to spend drug-trafficking profits to secure that legal representation where the federal drug forfeiture statute contained no exemption for assets to be used to pay for legal fees and the law firm had a stake in the forfeited assets. *Caplin & Drysdale,* 491 U.S. at 619–22, 623 n. 3, 109 S.Ct. at 2649–50, 2651 n. 3. In weighing this factor in that case, the Supreme Court noted that it "clearly weigh[ed] in favor" of finding standing there because the attorney-client relationship was "one of special consequence". *Id.* at 623 n. 3, 109 S.Ct. at 2651 n. 3.

Further as to the first factor, the petitioner in *Triplett* challenged the constitutionality of the Department of Labor's administration of a provision of the Black Lung Benefits Act of 1972 that prohibited the acceptance of attorney fees for the representation of claimants, except such fees as are approved by the Department. *Triplett,* 494 U.S. at 717, 110 S.Ct. at 1430. The Supreme Court held that an attorney who had collected fees in violation of the statute had standing to raise the legal rights and interests of black lung claimants who had hired him; the attorney raised the argument that the fee scheme contravened those claimants' due process rights to obtain legal representation because it rendered claimants unable to obtain legal representation for their claims. *Id.* at 720, 110 S.Ct. at 1431–32. The Supreme Court concluded that "a due process right to representation is placed at issue here, since at least one of the claimants who retained [the attorney] received benefits that the Government was seeking to recover as erroneously paid." *Id* at 721, 110 S.Ct. at 1432.

In this case, the appellant attorney seeks to challenge a direct restriction on his own activity (charging a fee prior to the issuance of a final Board decision) on the ground that enforcement of the restriction against him would essentially prevent VA claimants in general from entering into a relationship with him. Such circumstances would appear to satisfy the first factor; however, the third party here has not been identified as consisting of a particular individual whose rights have actually been affected. Rather, the appellant attorney is attempting to assert the rights of all veterans in general and the rights of the appellant veteran. Unlike the facts in *Caplin & Drysdale* and *Triplett,* the appellant veteran here has not, as discussed above, alleged that he, and counsel is not asserting that *any particular veteran* (including the appellant veteran), has experienced any adverse effect as to VA benefits as a result of the application of section 5904(c)(1), and the appellant attorney has thus not shown that a due process right to representation has been placed at issue here. In the instant case, although there is a concrete restriction on legal fees, such restriction did not impair the ability of the particular appellant veteran to hire an attorney and the willingness of this particular appellant attorney to represent him. Counsel here represented the veteran at the VA administrative level, prior to the issuance of a final Board decision.

Moreover, this is not a case where a VA claimant or the appellant veteran obtained counsel *after* a final Board decision and is asserting that if they had had counsel *before* that final Board decision, they would have a better case on appeal to this Court. The requirement of a final Board decision under section 5904 has thus *not* been alleged or shown to have interfered with the appellant attorney's representation of the appellant veteran in this case or of any other particular VA claimant. Moreover, unlike the situation in *Walters* and *Triplett,* there is no assertion that the government is seeking to take away a benefit previously provided. *Walters,* 473 U.S. at 320 n. 8, 105 S.Ct. at 3189 n. 8 (concluding that "[s]ince at least one of the [VA] claimants here alleged a diminution of benefits already being received, ... we must in any event decide whether 'due process' under the circumstances includes the right to be represented by employed counsel"); *Triplett,* 494 U.S. at 721, 110 S.Ct. at 1432 (noting that "at least one of the claimants who retained respondent [attorney] received benefits that the Government was seeking to

recover as erroneously paid"). Finally, the pleadings here do not show, as they did in *Triplett*, that the appellant attorney was paid in violation of the challenged statute for the representation provided.

As to counsel's claim on behalf of the appellant veteran and all VA claimants, we hold that although the first prudential factor (relationship of the litigant to the person whose rights are being asserted) weighs in favor of standing in view of the Supreme Court's finding that the attorney-client relationship "is one of special consequence", the weight to be accorded this factor is quite weak in the instant case. Unlike the representation at stake in *Caplin & Drysdale* and *Triplett*, as discussed above, the attorney-client relationship being asserted does not, as to the appellant veteran, involve an interference with any due process right to representation and, as to all VA claimants, any such relationship is purely speculative. The Court notes that the first factor would have been sufficient to allow standing in this case if there had been at interest the right to representation of an actual, tangible person, *see FEC,* 28 F.3d at 1280–81; *City and Suburban Distributors–Illinois, Inc., supra,* but, given the speculative nature of the contention in the present case, we do not find standing here under our best reading of the pertinent caselaw on standing. Because we hold that this first factor has not been sufficiently satisfied to allow standing, we will proceed to examine the remaining factors.

*ii. Second prudential factor:* The second factor (the ability of the person to advance his own rights) weighs against finding standing because VA claimants do not face the type of obstacles to bringing their own challenges that ordinarily weigh in favor of finding third-party-rights standing. For example, VA claimants do not face a fear of being prosecuted for asserting a constitutional right such as in the case of a patient who may "be chilled from such assertion by a desire to protect the very privacy of her decision [to an abortion] from the publicity of a court suit"; nor is there the presence of an imminent mootness such as in the case of an individual patient whose right is "irrevocably lost" because of the elapse of time if her finances preclude procuring a medical procedure. *Singleton,* 428 U.S. at 117, 96 S.Ct. at 2875–76. In such instances, the Supreme Court has allowed a physician to assert the rights of women patients. *Id.* at 118, 96 S.Ct. at 2876.

VA claimants are also not forced to forgo their rights in order to assert them, as the members in *National Association for the Advancement of Colored People v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), would have had to do had the Court not found standing on behalf of the organization. The Association, in resisting a court order that it divulge the names of its members, was permitted to assert the First and Fourteenth Amendments rights of its member to remain anonymous. In addition, VA claimants do not face a practical disincentive to sue, that is, to raise the argument in an appeal to this Court. *See Powers v. Ohio,* 499 U.S. 400, 413–16, 111 S.Ct. 1364, 1372–73, 113 L.Ed.2d 411 (1991) (litigant had third-party-rights standing on behalf of excluded venireperson whose injunctive relief against particular prosecutor "is unlikely because the violation is unlikely to recur and the financial stake in the litigation is small relative to the costs of litigation"); *Amato,* 952 F.2d at 751 (discussing *Powers, supra,* in holding that third party faced no obstacle to suing); *see also Warth,* 422 U.S. at 498–501, 510, 95 S.Ct. at 2205–06, 2210 (holding that taxpayers who claimed they were suffering economic injury consequent to allegedly discriminatory and exclusionary zoning practices lacked standing to assert constitutional rights of low-income persons in part because there was no obstacle to those low-income persons' asserting own rights in proper case); *Hodel v. Irving,* 481 U.S. 704, 711–12, 107 S.Ct. 2076, 2080–81, 95 L.Ed.2d 668 (1987) (third party unable to assert own rights because of death). Accordingly, the Court concludes that the appellant attorney in this case has not shown that his prosecution of this claim "is necessary to insure protection of the rights asserted, as there is no indication that persons who in fact have been ['injured'] are disabled from asserting their own right in a proper case." *Warth,* 422 U.S. at 510, 95 S.Ct. at 2210.

*iii. Third prudential factor:* Finally, the third prudential factor (the impact of the litigation on the third-party interests) weighs against finding standing as well, because VA claimants are not impaired from exercising their constitutional rights. They are not in a class of persons, such as that presented in *Eisenstadt v. Baird,* 405 U.S. 438, 446, 92 S.Ct. 1029, 1034–35, 31 L.Ed.2d 349 (1972), where the third party was not subject to prosecution under the challenged statute and was thereby denied a forum in which to assert their own rights. The defeat of the attorney appellant's suit here and the enforcement of section 5904 will not deny VA claimants a forum in which to assert their own rights. *See Craig,* 429 U.S. at 196, 97 S.Ct. at 456 (holding that vendor has third-party-rights standing to assert constitutional challenge to statute prohibiting sale of alcohol to males of certain age based in part on consideration that the failure of the litigant "to prevail in his suit would 'materially impair the ability of' males 18–20 years of age to purchase 3.2% beer despite their classification by an overt gender-based criterion") (quoting *Eisenstadt, supra* ); *cf. NARS v. Derwinski,* 994 F.2d 583, 585 (9th Cir.1992) (concluding that *Walters, supra,* "left open the possibility of a constitutional attack on the fee limit as applied to particular classes of veterans" and holding that various factors, including consideration of particular VA benefit involved, must be balanced in reaching such determination).

*iv. Balance of prudential factors:* Accordingly, the Court is of the view that, at most, one of the prudential factors tends to "counsel[ ] for review here". In light of the above discussion of the caselaw and the ambiguity in it, the Court believes that if only one factor favors review, that factor should apply unequivocally, that is, its weight should be strong and clear. Here, as described above, the first factor's weight on the facts before us is quite weak and speculative. The Court thus concludes that in this case the appellant attorney lacks third-party-rights standing because the prudential factors do not outweigh the policies behind the general rule that a party may not attack governmental action on the ground that it infringes the rights of some third party.

■ *2. Merits.* The Court acknowledges that the question whether the attorney appellant lacks standing to assert the third-party-potential rights of all VA claimants is a close one in this case and notes that no clear precedent exists which is dispositive of the issue presented. In light of this, the Court will consider the merits of the claim on the assumption that the attorney appellant has standing to bring this third-party constitutional challenge. For the reasons discussed below, the Court holds, alternatively, that no showing has been made that the fee limitation in 38 U.S.C. § 5904(c) for representation before VA violates a Fifth Amendment right to due process or a First Amendment right to freedom of speech and to petition the government.

■ *a. Due process:* In *Walters,* the Supreme Court held that the pre-VJRA $10.00 fee limit was not unconstitutional as violative of due process. *Walters,* 473 U.S. at 334, 105 S.Ct. at 3196. The *Walters* case was decided before the enactment of the VJRA and the establishment of this Court. The appellant veteran's arguments in the present case relate to the effect of the VJRA fee limits on representation in this Court.

Following the enactment of the VJRA and the establishment of this Court, the U.S. Court of Appeals for the Ninth Circuit stated that *Walters* "left open the possibility of a constitutional attack on the fee limit as applied to particular classes of veterans" and held that there was no due process violation in the case before it. *NARS,* 994 F.2d at 585. The Ninth Circuit held that, under *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the court must balance (1) the government's interest in enforcing the fee limitation; (2) the private interest affected by the limitation; (3) the risk of an erroneous deprivation of the particular VA benefits under the present VA system; and (4) the probability that allowing veterans to retain counsel would avoid erroneous deprivations of the particular VA benefits. *NARS,* 994 F.2d at 588 (citing *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903). The Ninth Circuit discussed each of these factors, took into account the Congressional findings

on the adequacy of VA adjudication procedures, and concluded:

> Given our findings as to the government and private interests at stake in this case, and given that the issue is whether the presence of attorneys would "sharply diminish" the probability of error in the adjudication of [claims based on exposure to ionizing radiation during service], we conclude that the evidence presented does not satisfy the extraordinarily strong showing standard set forth in Walters, and we find no due process violation.

*NARS*, 994 F.2d at 594.

Similarly, we conclude that the appellant attorney here has not shown by evidence that the limit on fees for representation in VA's administrative process reduces the availability of representation in this Court or that representation before the Court makes a significant difference in the outcome (the Court is not making negative findings in these respects, but is deciding only that the appellant has not carried the burden of demonstrating any such effects). The appellant attorney's arguments regarding such impact are purely speculative. Accordingly, the Court holds that there has been no Fifth Amendment constitutional violation.

■ *b. Freedom of speech; petition.* In *Walters,* the Supreme Court concluded that the analysis of the First Amendment argument also raised there by the veteran claimants was essentially the same as that under the Due Process Clause. *Walters,* 473 U.S. at 334–35, 105 S.Ct. at 3196–97. In view of the foregoing due process analysis, the Court also holds that the appellant attorney has not shown that the fee limit violates the First Amendment rights of VA claimants. *See Walters, supra; NARS,* 994 F.2d at 594–95.

### III. Conclusion

Upon consideration of the record and the briefs and in view of the foregoing analysis, the Court holds that the appellants have not demonstrated that the BVA committed error in its July 18, 1994, decision, and thus affirms that decision.

AFFIRMED.