# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-0678

DOUGLAS J. ROSINSKI, PETITIONER,

v.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before DAVIS, *Chief Judge*, and PIETSCH and GREENBERG, *Judges*.

## O R D E R

On February 8, 2018, Douglas J. Rosinski filed through counsel [1] a petition for extraordinary relief in the form of a writ of mandamus. The petitioner asks the Court to order VA to provide him, in his capacity as counsel representing current claimants before VA, the same access that veterans service organizations (VSOs) have to newly completed but not promulgated regional office (RO) rating decisions (draft rating decisions).

For the following reasons, the Court will grant the petition, in part, and order the Secretary to issue an appealable decision, with the appropriate notice of appellate rights, to Mr. Rosinski regarding his request for access to draft rating decisions.

## I. BACKGROUND

VA's *M21-1 Adjudication Procedures Manual* allows VSOs to "review a rating decision prior to promulgation" to "identify any clear errors or matters of clarification that require significant discussion, and/or correction *prior* to promulgation." M21-1 ADJUDICATION PROCEDURES MANUAL, pt. I, ch. 3, sect. B(3)(a), (b).

The petitioner is a private attorney who represents veterans and other claimants before VA and at this Court. The petitioner claims that "at any time, [he] represents several dozen claimants and appellants awaiting VA rating decisions." Petition at 3. Currently, he is representing several clients at the RO level. Oral Argument (OA) at 22:29, *Rosinski v. Wilkie*, U.S. Vet. App. No. 18-0678 (oral argument held Aug. 23, 2018), http://www.uscourts.cavc.gov/oral_arguments_audio.php. In January 2014, the petitioner wrote to VA, requesting access to the draft rating decisions of all the claimants he represented. *See* Petition, Exhibit (Ex.) B. The petitioner sent followup requests in March 2014, August 2014, September 2015, and February 2017. Petition, Exs. C-F. In April 2017, VA emailed the petitioner, stating: "[The Veterans

---

[1] The Court granted Mr. Rosinski's counsel's motion to withdraw on July 13, 2018; since then, Mr. Rosinski has continued pro se.

Benefits Administration] is unable to provide you the opportunity to seek clarification of unpromulgated rating decisions at this time." Petition, Ex. H.

This is the second petition that the petitioner has filed with the Court on this issue. In April 2017, the petitioner filed a petition for extraordinary relief in the nature of a writ of mandamus, asking the Court to provide him, in his capacity as an attorney representing claimants before the VA, access to draft rating decisions. The petitioner also filed an opposed motion for aggregate action encompassing all similarly situated attorneys. The Court dismissed the petition for lack of standing and denied the motion for aggregate action in January 2018. *Rosinski v. Shulkin*, 29 Vet.App. 183 (2018).

Mr. Rosinski filed this petition on February 8, 2018, requesting a writ of mandamus ordering the Secretary to immediately grant him access to draft rating decisions in cases where he is the representative of record. On April 10, 2018, this case was submitted to a panel for a decision under section I(b)(4) of the Court's Internal Operating Procedures. The Court heard oral argument on August 23, 2018.[2]

## II. ANALYSIS

### A. The Court has subject matter jurisdiction over Mr. Rosinski's dispute.

This matter arises under the All Writs Act, which authorizes the Court to "issue all writs necessary or appropriate in aid of [its] respective jurisdiction[] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The All Writs Act "unambiguously applies" to the Court, but it does not expand its jurisdiction. *Cox v. West*, 149 F.3d 1360, 1363 (Fed. Cir. 1998). Rather, "the Act provides for the issuance of writs 'in aid of' the jurisdiction already possessed by a court." *Id*. "The propriety of a writ . . . turns on the question of whether the Court . . . would have jurisdiction to review" the challenged matter on direct appeal. *Bates v. Nicholson*, 398 F.3d 1355, 1359 (Fed. Cir. 2005).

The Court has "exclusive jurisdiction to review decisions of the Board of Veterans' Appeals," 38 U.S.C. § 7252(a), which in turn has jurisdiction to hear "[a]ll questions in a matter which under [38 U.S.C. § 511] is subject to decision by the Secretary," 38 U.S.C. § 7104(a). Section 511(a) commands the Secretary to "decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." A "law that affects the provision of benefits" is "a single statutory enactment that bears a Public Law number in the Statutes at Large." *Bates,* 398 F.3d at 1361. Therefore, "[t]he ultimate question" as to whether this Court has subject matter jurisdiction "is whether [the] case arises 'under a law that affects the provision of benefits.'" *Id.* at 1359.

---

[2] The Court did not seek a response from the Secretary to Mr. Rosinski's petition before scheduling this case for oral argument. *Cf.* U.S. VET. APP. R. 21(d). Because this case presents the same legal issues as Mr. Rosinski's previous petition, and because briefing in that case was particularly robust, we did not see a need to delay the adjudication of this case with additional, redundant briefing.

2

The petitioner argues that VA's policy interferes with both his and his clients' statutory and regulatory rights. Petition at 5-21. He contends that he has a statutory right to represent his clients under 38 U.S.C. § 5904[3], and that his clients have a concurrent right to be represented by the person of their choosing. *Id*. at 11. During oral argument, the petitioner additionally argued that the policy implicated 38 U.S.C. § 5701(b), which commands the Secretary to disclose relevant records to "duly authorized" representatives. OA at 9:35-:52.

This Court has expressly held that both sections 5701 and 5904 are laws "affecting the provision of benefits" for the purposes of section 511 and are thus within the Court's subject matter jurisdiction. *Rosinski*, 29 Vet.App. at 189. Therefore, "regardless of whether the [M21-1 provision at issue here] derives from section 5701 or 5904, the Court has subject matter jurisdiction over this matter." *Id.*

## B. Mr. Rosinski has standing to bring this challenge.

### 1. Legal Background

A party invoking the jurisdiction of the Court must show standing to have its grievance heard. *Swan v. Derwinski*, 1 Vet.App. 20, 22 (1990); *see also Mokal v. Derwinski*, 1 Vet.App. 12, 15 (1990) (adopting the case-or-controversy requirements of Article III courts). Standing requires three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical[.]'" Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted).

In addition to direct standing, the Supreme Court has recognized limited circumstances "where it is necessary to grant a third party standing to assert the rights of another." *Kowalski v. Tesmer*, 543 U.S. 125, 129-30; *In re Stanley*, 9 Vet.App. 203, 210-11 (1996). To invoke third-party standing, "the party asserting the right [must have] a 'close' relationship with the person who possesses the right." *Kowalski*, 543 U.S. at 130. In addition, the party asserting the right must also show that "there is a 'hindrance' to the possessor's ability to protect his own interests." *Id*.

Furthermore, "'Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1549 (2016) (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring)). Where Congress grants a statutory right, the violation of that right may confer standing when it causes a concrete injury. *Id*. But intangible harms defined by statute may also form the basis of standing. *Id*.; *see also Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440 (1989) (plaintiffs had standing to

---

[3] 38 U.S.C. § 5904(a) permits the Secretary to "recognize any individual as an agent or attorney for the preparation, presentation, and prosecution of claims under laws administered by the Secretary."

sue to obtain information regarding a professional legal organization's committee's activities to the extent permitted by statute).

*2. The Parties' Standing Arguments*

The petitioner argues that both he and his clients have been injured by the challenged M21-1 policy. He argues that he has a statutory right to represent clients and obtain a fair adjudication process, and that the Secretary's discriminatory policy vis-à-vis VSOs invades these rights. Petition at 11; *see also* 38 U.S.C. § 5904(a); *Spokeo*, 136 S. Ct. at 1547. He claims that because he is denied access to draft rating decisions, he has to do extra work to achieve the same results as a VSO; and because fees are statutorily restricted, performing extra work means he has to either do it for free or lower the effective hourly rate for all of the work. Petition at 12; *see also* 38 U.S.C. § 5904(a)(5). He further advances that his inability to alert the RO of factual errors in draft rating decisions will lead to unnecessary delay in certain claims, causing him to forego new clients. *See* 38 C.F.R. § 14.632(b) (2018). The petitioner also argues that he suffers an intangible harm through interference with the attorney-client relationship, resulting from his lack of access to information that he could share with his clients. Petition at 16-17 (citing *Pub. Citizen*, 491 U.S. at 450).

The petitioner also argues that his clients are not fully afforded their right to representation under section 5904(a) because they must choose between *either* using the representative of their choosing—here, the petitioner—*or* being represented by a VSO with access to draft rating decisions. Petition at 6, 11. By choosing to be represented by the petitioner, his clients have had to constrict their statutory right to access "files, records, reports, and other papers and documents" concerning them. Petition at 6 (citing 38 U.S.C. § 5701(b) and 38 C.F.R. § 1.577(a) (2017)). Further, the petitioner posits that the ability to correct factual errors before the promulgation of rating decisions could save years in litigation. Denying access to draft rating decisions could lead to either unnecessary or lengthier appeals. Petition at 10. During oral argument, the petitioner presented a list of clients who have received at least one rating decision, and stated that for all these clients he could have "prevented a second or third or fourth trip" through the RO adjudication process. OA at 1:40:04-1:40:22. The petitioner concluded that he has been hindered from accessing draft rating decisions relating to his clients for more than 4 years, and as a result his clients have been hindered in asserting their rights to a fair claims process. OA at 1:34:39-1:35:12.

The Secretary responds that the petitioner's statements are hypothetical and speculative, and insufficient to show that he suffered or will imminently suffer an injury-in-fact. OA at 41:31-41:45. According to the Secretary, a lack of access to draft rating decisions does not prevent the petitioner from representing his clients because he still has recourse to an M21-1 provision that provides for correction of rating decision narratives or code sheets even after promulgation of draft rating decisions. OA at 42:20-43:12; *see also* M21-1 Adjudication Procedures Manual, pt. III, subpt. iv, ch. 7, sect. B.

The Secretary also argues that third party standing is inappropriate because the petitioner has not met either of the two criteria necessary for such standing. OA at 54:55-58:14. Although he recognizes a special relationship between attorneys and clients, the Secretary posits that the "close relationship" factor is either unmet or weak when an attorney invoking third party standing cannot show that a particular client has been adversely affected. OA at 55:55-56:32; *see also Kowalski*,

4

543 U.S. at 131 (there was no close relationship where the clients were hypothetical); *Stanley*, 9 Vet.App. at 213 (the close relationship was weak where the claimed injury to clients was purely speculative). The Secretary argues that the petitioner has either failed to meet the close relationship factor, or satisfied it weakly, because the petitioner has not been able to identify any particular client or have any client join his suit. OA at 54:55-55:23. As to the "hindrance" factor, the Secretary claims that *Stanley* established that nothing hinders claimants from challenging policies if they believe that they have been harmed. OA at 57:32-:44. Claimants can correct the narrative section of decisions even after promulgation without having to go through the appeals process, but they can also appeal any decision they believe to be erroneous. OA at 58:01-:14.

### *3. Mr. Rosinski has direct standing.*

The Court holds that the petitioner has standing for his petition to be heard by the Court. First, the petitioner has identified a statutory right—his right under 38 U.S.C. § 5904(a) to represent clients throughout the claims process—that the policy violates. Under that statute, Congress has empowered the Secretary to "recognize any individual as an agent or attorney for the preparation, presentation, and prosecution of claims under laws administered by the Secretary." 38 U.S.C. § 5904(a). Once a representative has been recognized, Congress has additionally mandated that "[t]he Secretary shall make disclosure of [certain] files, records, reports, and other papers and documents" to the "duly authorized agent or representative of a claimant." 38 U.S.C. § 5701(b). The relevant files, records, reports, papers, and documents are those which "pertain[] to any claim under any of the laws administered by the Secretary." 38 U.S.C. § 5701(a).[4]

Congress has invested attorneys—like the petitioner—and VSOs with the same rights to represent their clients, including the ability to review the records related to their clients' claims. 38 U.S.C. §§ 5701, 5902(a). But the Secretary has seen fit to provide VSOs access to draft rating decisions while denying the same access to the petitioner and other attorneys, thereby conferring a benefit on VSOs and denying that same benefit to attorneys. It is indisputable that the ability "to identify any clear errors or matters of clarification that require significant discussion, and/or correction *prior* to promulgation" is a benefit, for it provides its possessor with the ability to save time and effort involved with correcting promulgated rating decisions. M21-1 ADJUDICATION PROCEDURES MANUAL, pt. I, ch. 3, sect. B(3)(a).

Our dissenting colleague asserts that this benefit is "nebulous" because there are "other avenues for quick correction of rating decision errors." *Post* at 12. But the existence of other, post-promulgation methods for error correction does not change the fact that the pre-promulgation review is a benefit denied to the petitioner. Rather, "the fact that an injury may be outweighed by other benefits . . . does not negate standing," *Denney v. Deutsche Bank AG*, 443 F.3d 253, 265 (2d

---

[4] Although our dissenting colleague challenges whether draft rating decisions are "papers" or "documents" for the purposes of section 5701(b), *see post* at 11, the Court holds that they are. Draft rating decisions, although not yet part of a claimant's claims file, certainly "pertain[] to [a] claim," *see* 38 U.S.C. 5701(a), and the Secretary uses the Veterans Benefits Management System (VBMS), VA's electronic records repository, to furnish access to the draft rating decisions. The Court is therefore satisfied that these draft rating decisions fall under the ambit of section 5701(b). To the extent that our dissenting colleague suggests that the petitioner is required to bring his challenge in U.S. District Court, *post* at 11, we disagree. Mr. Rosinski does not seek the release of a *specific* record; rather, he challenges the validity of VA's underlying policy as applied to him, and—as previously discussed—the Court possesses subject matter jurisdiction over that issue.

5

Cir. 2006), and the fact that Mr. Rosinski has other ways to achieve the same ultimate result does not negate the fact that he is denied *this* avenue to do so or excuse the extra burdens imposed by those alternate methods.

Indeed, as Mr. Rosinski contends, the Secretary's policy results in both tangible and intangible harm. Specifically, Mr. Rosinski states that the policy requires him to perform unnecessary work to obtain the same results that a VSO could obtain through pre-promulgation review. *See* Petition at 8, Ex. I. As a result, he contends that he must forego new clients in order to keep his workload manageable. Petition at 9-10. In addition, because the size of the petitioner's fees is statutorily restricted, the delays in the adjudication of his clients' claims result in an overall reduced rate for his work. Petition at 12. Put another way, because the petitioner will receive the same contingency fee in a case where benefits are awarded regardless of how much time he devotes to that case, his effective hourly rate is lower because of the Secretary's policy.

In sum, the statutes governing representation at VA vest attorneys and VSOs with the same rights in representing clients before VA. But the Secretary's policy deprives Mr. Rosinski of a benefit—pre-promulgation review—that the Secretary affords to VSOs. This unequal treatment results in injuries in fact, both tangible and intangible, to Mr. Rosinski, and a decision by the Court on the merits would redress these injuries. The Court therefore holds Mr. Rosinski has direct standing to challenge the policy.

### *4. Mr. Rosinski has third-party standing to represent the interests of his clients.*

In addition, the Court holds that the petitioner meets the requirements for asserting third-party standing on behalf of his clients. First, the petitioner attests that, at any given time, he represents dozens of claimants before VA. Each of these claimants "has a due process right to fair adjudication of his claim for benefits." *Cushman v. Shinseki*, 576 F.3d 1290, 1291 (Fed. Cir. 2009). Although VA's policy granting VSOs pre-promulgation review is discretionary, it results in a system where some veterans—those represented by attorneys—are deprived of a benefit afforded to others—those represented by VSOs. And delays in the adjudication of benefits claims result in obvious harm—claimants wait longer for the benefits on which they often depend. Thus, the petitioner's clients have rights at stake in the current dispute. *See Kowalski*, 543 U.S. at 129-30.

Second, the petitioner has a close relationship with his clients. In *Warth v. Seldin*, the Supreme Court recognized that, although third-party standing was generally disfavored, it was permitted "when enforcement of the challenged restriction against the litigant would result indirectly in the violation of third parties' rights." 422 U.S. 490, 510 (1975). In *Caplin & Drysdale, Chartered, v. United States*, the Supreme Court extended this principle to attorney-client relationships where an attorney invokes the rights of an existing client. 491 U.S. 617, 624 n.3 (1989). In contrast, the Supreme Court has rejected the attorney-client relationship as insufficiently close where it involves the representation of a *hypothetical* client. *See Kowalski*, 543 U.S. at 131.

Here, because the restrictions placed on the petitioner by the Secretary's policy affect the rights of his clients, and because the petitioner has existing attorney-client relationships with those clients, the Court holds he has a sufficiently close relationship to warrant third-party standing. It is of no moment that the petitioner has not identified a *specific* client. Indeed, the fact that he is

asserting third-party standing on behalf of his clients in the aggregate does not change the fact that those clients are real, not hypothetical, and that they possess rights at stake in this dispute.

Finally, there is a hindrance to the petitioner's clients' ability to protect their own interests. *See Kowalski*, 543 U.S. at 130. This is because of the structure of the VA adjudication system. Each of the petitioner's clients has an interest in making use of the pre-promulgation review process. But an individual claimant will usually have only one opportunity to request such access for the petitioner, and those requests must be made in the short window of time before VA issues the rating decision. Consequently, the petitioner—who represents multiple clients and has multiple chances to request access—is in a better position to assert his clients' rights in this matter than any one of his clients is individually.

Because the petitioner's clients have rights at stake in this dispute but face a hindrance to protecting those rights, and because the petitioner has a close relationship with his clients, the Court finds that he has third-party standing.

## C. The Court will grant Mr. Rosinski's petition in part.

### *1. The Parties' Merits Arguments*

The petitioner argues that the Secretary had no legal basis for denying petitioner access to draft rating decisions while permitting VSOs to access those documents. Petition at 5. He argues that the discriminatory treatment violates both his rights as an accredited representative of veteran claimants and his clients' due process rights. *Id.* Further, he claims that the challenged policy contradicts VA regulations providing claimants access to pertinent information through their chosen representatives. Petition at 6; *see also* 38 C.F.R. § 1.577(a). The petitioner concluded that the Secretary's policy harmed both him and his clients by denying statutory or regulatory rights, by causing delay in the adjudication, and by increasing the amount of his clients' benefits awards that is withheld to pay for attorney's fees. Petition at 6-7, 10-12.

The Secretary argues that the policy is proper despite discriminating between VSOs and the petitioner because those groups are not similarly situated. *See* OA at 47:27-:31. The Secretary first posits that there is a historical special relationship between VSOs and VA. OA at 46:20-:39. He argues that VSOs and attorneys have different ethical requirements and obligations to their clients, which puts them in different positions within the informal, nonadversarial claims process. OA at 46:43-:52. The Secretary next claims that Congress has established a difference between VSOs and attorneys by chartering VSOs, allowing VSOs to have offices within VA structures, allowing VSOs access to "Department records," creating reporting requirements for VSOs, and prohibiting VSOs from charging fees. *See* OA at 46:54-47:26; *see also* 38 U.S.C. § 5701(d). This distinction, according to the Secretary, persists even if an attorney was hired by a VSO to represent a veteran. OA at 49:15-:46. Finally, the Secretary argues that the challenged policy does not implicate § 1.577(a) because draft rating decisions are not contemplated by that regulation. OA at 53:58-54:53.

7

*2. Mr. Rosinski has not demonstrated that he lacks adequate alternative means to attain his desired relief.*

The Court "may issue all writs necessary or appropriate in aid of [its] respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *see also Cox*, 149 F.3d at 1363. "The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Court,* 426 U.S. 394, 402 (1976). A writ of mandamus may be issued under section 1651(a) to command agency action when three conditions are satisfied. First, "the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004) (quoting *Kerr* 426 U.S. at 403). The petitioner must also meet "the burden of showing that [his] right to issuance of the writ is clear and indisputable." *Id*. at 381 (quoting *Kerr*, 426 U.S. at 403) (internal quotations omitted). Finally, the issuing Court must be satisfied that the writ is appropriate under the particular circumstances of the case. *Id*.

The petitioner asks the Court to order the Secretary to grant him access to draft rating decisions in cases where he is the representative of record, in contradiction to the Secretary's April 2017 email denying him this access. Petition at 2. The Court holds, however, that the petitioner has not shown he lacks adequate alternate means to attain this desired relief. *Cf. Cheney*, 542 U.S. at 380. Specifically, because this Court has jurisdiction over the subject matter of the petition, the petitioner's dispute necessarily arises "under a law that affects the provision of benefits." He is therefore entitled to a decision from the Secretary that he can, if necessary, appeal to the Board and the Court. *See* 38 U.S.C. §§ 511, 7104(a). And because the petitioner has a right to an appealable decision, he may not use a writ "'as [a] substitute[] for [an] appeal[], even though hardship may result from delay and perhaps unnecessary trial.'" *Lamb v. Principi*, 284 F.3d 1378, 1384 (Fed. Cir. 2002) (quoting *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953)).

But the petitioner has not yet received such a decision. In particular, the April 2017 email does not constitute a "decision" within the meaning of section 511 regarding the petitioner's right to access his clients' draft rating decisions. Although that email states that "[the Veterans Benefits Administration] is unable to provide [him] the opportunity to seek clarification of unpromulgated rating decisions at this time," the email provides no explanation for VA's determination, nor does it provide the required notice of appellate rights. Petition, Ex. H. The Secretary has also given no indication that a formal decision is forthcoming. *But see* O.A. at 1:19:35-:56 (stating that the Secretary is considering revising his policy).

By statute, "[t]he Secretary *shall* decide all question of law or fact necessary to a decision by the Secretary under a law that affects the provision of benefits." 38 U.S.C. § 511(a). The Secretary's refusal to issue a decision pursuant to section 511 frustrates judicial review and deprives the petitioner of his clear and indisputable right to such a decision. *Chisholm v. McDonald*, 28 Vet.App. 240, 243 (2016); *see also Cheney*, 542 U.S. at 381. Thus, "without the Court's intervention in the form of extraordinary relief, the petitioner will not be allowed to pursue his claim to the Board, the Court is left with the clear understanding that the issuance of a writ of mandamus is necessary to protect its potential jurisdiction over this matter." *Freeman v. Shinseki*, 24 Vet.App. 404, 417 (2011).

Because the Court has jurisdiction over this matter through section 5701 and section 5904, and because a decision of the Secretary permits a party to appeal to the Board and ultimately to the Court, the Court holds that a writ of mandamus ordering the Secretary to issue a decision on the matter at hand is necessary in aid of our jurisdiction. *See* 28 U.S.C. § 1651(a); 38 U.S.C. §§ 7104(a), 7252(a); *Cox*, 149 F.3d at 1363; *Erspamer v. Derwinski*, 1 Vet.App. 3 (1990) (ordering the Secretary to issue a decision complying with a remand from the Board). The Court will, therefore, grant the petition in part and direct the Secretary, within 30 days from the date of this order, to issue an official, appealable decision on the petitioner's request for access to draft rating decisions.

Finally, the Court agrees with our dissenting colleague that, because the Secretary's policy is "purely discretionary," *post* at 10, he has the power to resolve this case with a single stroke of his pen. Certainly, when the Court issued a decision on Mr. Rosinski's last petition, the Secretary was on notice that his policy gives rise to grave concerns regarding its fairness and continuing validity. *See, e.g.*, *Rosinski*, 29 Vet.App. at 192-93 (Davis, C.J., concurring). The Secretary's lack of corrective action in the year since that decision is troubling, and the Secretary should consider whether he—and the veterans Congress charged him to assist—would be better served by voluntarily changing his policy, rather than by waiting for the lengthy appeals process to run its course.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the petition, in part, and direct VA to issue an appealable decision on the petitioner's request.

On consideration of the foregoing, it is

ORDERED that the petition is GRANTED IN PART. Within 30 days of the date of this order, the Secretary shall issue an appealable decision on this matter.

DATED: January 24, 2019                                              PER CURIAM.

GREENBERG, *Judge*, concurring: I concur in the well-written majority opinion, but would go farther. I therefore write separately. The majority correctly acknowledges that the petitioner has yet to receive a decision, and that the Secretary has also given no indication as to when a decision may be forthcoming. I agree that the petitioner has a high likelihood of success and that VA's policy is discriminatory on its face. Yet, the Court stops at merely providing a remedy that requires the petitioner to putter through the slog of VA's appeal process.

The All Writs Act also provides the Court with the authority to issue "[a]n alternative writ or rule nisi" regarding any matter over which it has jurisdiction. 28 U.S.C. § 1651(b). Compared to writs issued under section 1651(a), which can only be used "in aid of [the Court's] respective jurisdiction," the "alternative writs" are not confined by statutory limits. Unlike other cases in which the Court has granted a writ of mandamus under section 1651(a), in this instance, the

petitioner is not asking the Court to compel the Secretary to issue a decision. *See, e.g.*, *Chisholm*, 28 Vet.App. 240. Rather, the petitioner requests that the Court order the Secretary to grant him access to draft rating decisions in cases where he is the representative of record. Petition at 2.

The majority has found that the Court has jurisdiction to hear the matter and I am persuaded that the petitioner has a high likelihood of success on the merits. This is enough for the Court to issue a show cause order under 28 U.S.C. § 1651(b) and force the Secretary to change its policy immediately. If the Secretary refuses, the Court may then wield its statutory power to set this policy aside without further VA action. The Court, "to the extent necessary to its decision and when presented, shall . . . hold unlawful and set aside decisions . . . *conclusions*, rules, and regulations issued or adopted by the Secretary [or] the Board of Veterans' Appeals . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . . ." 38 U.S.C. § 7261(a)(3)(A) (emphasis added).

The majority finds that the Secretary has reached a conclusion without issuing a decision. This distinction is without significance because the Court may set aside either. *See id.* I join the majority's opinion because I agree that the Secretary's policy is arbitrary and capricious and must be changed. Yet, I believe the Court has the power to effect the proper remedy now. For this reason, I concur.

PIETSCH, *Judge*, dissenting: Although Mr. Rosinski has returned with refined legal arguments in reaction to the Court's January 26, 2018, panel order dismissing his first petition, he offers no new facts. As the facts have not changed, neither should the outcome: Mr. Rosinski continues to lack standing to challenge VA's policy.

Per VA's *Adjudication Procedures Manual* (M21-1), the purpose of allowing VSOs to review draft rating decisions "is to identify any clear errors or matters of clarification that require significant discussion, and/or correction *prior* to promulgation." M21-1, pt. I, ch. 3, sec. B.3.a. VSOs have a 48-hour window in which to identify clear errors and request clarifications, but "[d]isagreements with a decision should be pursued through the appellate process." M21-1, pt. I, ch.3, sec. B.3.c. VA's policy does not derive from any statute or regulation; it is purely discretionary. The Secretary could rescind the policy tomorrow and allow no one access to these draft decisions.

In his first petition, Mr. Rosinski argued that VA's policy interfered with his ability to practice law and provide competent representation to his veteran clients, and he suggested that he might suffer economic harm as a result of the policy. April 24, 2017, Petition (Pet. I) at 6; July 17, 2017, Supplemental Brief at 19-20. The Court addressed and dismissed those arguments in its January 2018 panel order. January 26, 2018, order at 7-8. Nonetheless, the Court acknowledged that Mr. Rosinski could return with facts showing how he was concretely harmed by VA's policy. *Id.* at 8 n.5.

Instead, Mr. Rosinski has returned only with polished legal arguments—apparently attempting to re-litigate the same issue that the Court settled last year. It is striking that the "Facts" sections of both petitions are identical, save for a footnote stating that he would not identify his

clients[5] and a note that the Secretary continues to deny him access to draft decisions. *Compare* Pet. I at 2-4, *with* Feb. 8, 2018, Petition (Pet. II) at 2-5. Given the lack of any pertinent change in circumstances, I cannot agree with the majority's decision to reverse course and now find that Mr. Rosinski has met his burden of demonstrating standing.

The majority bases its finding of personal standing, in part, on 38 U.S.C. § 5701(b), which allows a claimant or duly authorized representative to obtain "files, records, reports, and other papers and documents" pertaining to a claim. *Ante* at 5. Mr. Rosinski asserts that VA's policy hinders his ability to adequately represent his clients by reviewing the record and other information pertaining to their claims. Pet. II at 16-17. The majority reads "papers" and "documents" in section 5701(b) expansively to include draft rating decisions, yet cites no authority for this proposition. *Ante* at 5.

Section 5701(b) is titled "Confidential nature of claims" and is located in chapter 57 ("Records and Investigations") under subchapter I ("Records"). And, per section 5701(j), any disclosures that VA makes under section 5701(b) are governed by the Privacy Act. Thus, read in context, section 5701 pertains to official records within veterans' claims files. This is consistent with VA's implementing regulation, 38 C.F.R. § 1.577, which provides that an individual may gain access to his or her information upon request, but only applies to "records" that are "contained in any system of records maintained by [VA]," as governed by the Privacy Act. 38 C.F.R. § 1.577(a), (c) (2018).

Draft rating decisions, by their nature, are not part of VA's system of records because they have not yet been promulgated. The plain definition of "draft" is "a preliminary sketch or version (*to make a rough draft*)." FOWLER'S MODERN ENGLISH USAGE 231 (Revised 3d ed. 2004). To interpret section 5701(b) as requiring VA to disclose draft rating decisions before promulgation reads the terms "papers" and "documents" out of context and exceeds the bounds of the statute.

Further, even if draft decisions could be considered "papers," "records," etc., within section 5701(b), the majority neglects to consider that VA's disclosure of these records would be subject to the Privacy Act. *See* 38 U.S.C. § 5701(j) ("Except as provided in subsection (i)(1) of this section, any disclosure made pursuant to this section shall be made in accordance with the provisions of section 552a of title 5.") Under the Privacy Act, if an agency refuses to comply with an individual request for access to information pertaining to him that is contained in the agency's system of records, the recourse is to file a civil action against the agency in U.S. district court, which holds jurisdiction over those matters. 5 U.S.C. § 552a(g)(1). Thus, even if Mr. Rosinski had a right to access draft rating decisions on behalf of his clients, he would need to go to a district court to seek relief.

---

[5] I am not as impressed as my colleagues by Mr. Rosinski's subsequent theatrical gesture of waving a list of clients during oral argument and baldly speculating that he could have prevented unnecessary remands for them if VA had only allowed him that 48-hour period to review their draft decisions for clear errors and matters of clarification. *See ante* at 4 (citing O.A. at 1:40:04-:22). Certainly, there is no dispute that Mr. Rosinski has veteran-clients; the critical question is whether VA's policy has caused any concrete harm to him or them. And, VA's M21-1 explicitly allows for the prompt correction of errors in a manner that avoids remand—as the Court already explained in its January 2018 panel order.

The majority also finds that 38 U.S.C. § 5904 invests in Mr. Rosinski a right to represent clients throughout the claims process. *Ante* at 5. This general statute "concerns the terms and conditions under which agents and attorneys may be recognized and compensated for service to veterans who seek benefits." *Snyder v. Nicholson*, 489 F.3d 1213, 1216 (Fed. Cir. 2007). It does not, however, address what those agents and attorneys can or cannot access, or what actions they can or cannot take. Thus, the majority's attempt to apply this broad statute to the specific circumstances of Mr. Rosinski's petition is tenuous at best.

Further, the "benefit" that the majority finds VA to have denied Mr. Rosinski is too nebulous to find that its denial constitutes a concrete injury. *See ante* at 5. Although the majority theorizes that time and effort might be saved by review of draft decisions, it offers no direct support for this proposition, which is especially problematic given that VA's M21-1 provides other avenues for quick correction of rating decision errors. *See* Jan. 26, 2018, Order at 7 (citing M21-1, pt. III, subpt. iv, ch. 7, sec. B(3)(a) (the RO "must . . . correct the Narrative section of a rating decision if *after* the claimant has been notified of the decision it is discovered that inaccurate information was provided such as service dates or entitlements)); *id.*, sec. B(3)(b) (requiring correction of errors on the rating codesheet); *id.*, sec. B(3)(c) (requiring referral of an erroneous decision "to a decision maker to issue a new decision" once an error has been identified).

The majority's decision relies heavily on Mr. Rosinski's assertion that requiring an attorney to perform additional work to achieve the same result as a VSO representative constitutes an actual injury in fact sufficient to confer standing to challenge VA's policy. *Ante* at 5; Pet. II at 8-10. However, this bare assertion is undeveloped and remains in the realm of abstract hypotheticals and after-the-fact speculation—it never transforms into an injury that is particular and concrete, as required under the minimum constitutional standing requirements set forth in *Lujan v. Defenders of Wildlife*. 504 U.S. 555, 560-61 (1992). Although Mr. Rosinski invites the Court to imagine a scenario where harm could occur, conjectural or hypothetical harm does not satisfy the constitutional standing requirements. *See id.*

I also cannot agree with the majority's third-party standing analysis. Mr. Rosinski fails to demonstrate that his situation falls within the narrow exception to the general prohibition against permitting one party to assert the rights of a third party. *See Kowalski v. Tesmer*, 543 U.S. 125, 129-130 (2004); *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 474 (1982); *Warth v. Seldin*, 422 U.S. 490, 499-500 (1975); *In re Fee Agreement of Stanley*, 9 Vet.App. 203, 209 (1996).

First, Mr. Rosinski has not shown that he and his clients are so closely related that the challenged conduct (here, VA's policy to allow only VSOs to access draft decisions), as enforced against him, violates his clients' rights. *See Kowalski*, 543 U.S. at 130-31. The Supreme Court has noted that the attorney-client relationship is "one of special consequence." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 623 n.3 (1989). Nonetheless, courts hesitate to grant third-party standing to attorneys on behalf of their clients except in unusual cases, such as where the enforcement of a restriction against an attorney prevents his clients from contracting for his services, thus violating their due process right to obtain legal representation. *U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 720-21 (1990). Because Mr. Rosinski's clients do not have a "right" to

12

access draft decisions,[6] he has not demonstrated that this rare exception should apply in his case. *See id.* at 720 ("Ordinarily, of course, a litigant 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" (citations omitted)); *see also Willis v. Gov't Accountability Office*, 448 F.3d 1341, 1348-49 (Fed. Cir. 2006)); *Stanley*, 9 Vet.App. at 213.

Second, Mr. Rosinski has not demonstrated that there is a hindrance to his clients' ability to protect their own interests and directly bring a petition on their own behalf. *See Kowalski*, 543 U.S. at 129-30. The Court's analysis in *Stanley* should guide the outcome as to this factor. There, an attorney who represented veterans before VA sought to challenge a statute that restricted his ability to charge a fee before the Board issued a decision, on the basis that enforcing the restriction would prevent VA claimants from hiring him. 9 Vet.App. at 212. The Court concluded that "VA claimants do not face the type of obstacles to bringing their own challenges that ordinarily weigh in favor of finding third-party-rights standing." *Id.* at 213.

Similarly, here, Mr. Rosinski has not identified any obstacle preventing his clients from directly challenging VA's policy, such as a fear of prosecution for asserting their constitutional rights or a forfeiture of those rights in order to assert them. *See id.* Even if a hindrance of comparable gravity could conceivably exist here, it is the petitioner's burden to identify and prove it, and he has failed to do so. *See Padgett v. Peake*, 22 Vet.App. 159, 162 (2008) (confirming that, in this Court, the party seeking to invoke jurisdiction must establish that he has standing).

The threshold consideration of standing seldom arises in veterans benefits cases; however, its rarity does not detract from its importance. The majority, in reaching its conclusion, brushes over critical legal gaps and stretches the meaning of broad statutes and case holdings beyond their bounds. For the reasons previously articulated in the Court's January 2018 panel order, I would have held that Mr. Rosinski continues to lack standing to pursue his second petition.

---

[6] The majority relies on *Cushman v. Shinseki* for its holding that veterans have a "due process right to fair adjudication" of their claims. *See ante* at 6 (quoting 576 F.3d 1290, 1292 (Fed. Cir. 2009)). However, *Cushman* involved an adjudication that was tainted by the presence of an altered medical document, thus violating the veteran's right to a fair hearing. 576 F.3d at 1300. By contrast, a 48-hour period to review draft decisions for clear errors or matters of clarification that may otherwise be quickly corrected after promulgation is a courtesy, not a right.